Electronically FILED by Superior Court of California, County of Riverside on 08/12/2025 01:39 PM
Case Number CVRI2504616 0000138436359 - Jason B. Galkin, Executive Officer/Clerk of the Court By Melinda Criel, Clerk

1  Brian C. O'Hara, Esq. (SBN134024)
2  WATKINS & LETOFSKY, LLP
   2900 S Harbor Boulevard, Suite 240
3  Santa Ana, CA 92704
   Telephone: (949) 476-9400
4  Facsimile: (949) 476-9407

5  Attorney for Plaintiffs, STATE FARM
6  GENERAL INSURANCE COMPANY and
   STATE FARM MUTUAL AUTOMOBILE
7  INSURANCE COMPANY

8
                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
9
10            **FOR THE COUNTY OF RIVERSIDE, HISTORIC COURTHOUSE**

11 | STATE FARM GENERAL INSURANCE | **CASE NO.:** CVRI2504616
12 | COMPANY; STATE FARM MUTUAL | [Unlimited Civil Case]
   | AUTOMOBILE INSURANCE COMPANY, |
13 |                              |
   |              Plaintiffs,      | **SUBROGATION COMPLAINT FOR**
14 |                              | **DAMAGES:**
15 |   vs.                        |
   |                              | 1. **Negligence**
16 | TESLA, INC., a Texas corporation; and DOES | 2. **Strict Products Liability**
   | 1-20, Inclusive,             | 3. **Breach of Implied Warranties**
17 |                              |
   |              Defendants.      |
18

19        COME NOW PLAINTIFFS, STATE FARM GENERAL INSURANCE COMPANY and

20 STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY (hereinafter collectively

21 referred to as "Plaintiffs"), who are informed and believe, and thereon allege, against the

22 Defendants and DOES 1-20, Inclusive, and each of them, as follows:

23        1.      Plaintiff, STATE FARM GENERAL INSURANCE COMPANY, is a corporation

24 organized and existing under the laws of the State of Illinois and is and was, at all times mentioned

25 herein, qualified to do business in the State of California.

26        2.      Plaintiff, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

27 is a corporation organized and existing under the laws of the State of Illinois and is and was, at all

28 times mentioned herein, qualified to do business in the State of California.

- 1 -

3.     Defendant, TESLA, INC., a Texas corporation (hereinafter "TESLA"), is a corporation in the state of Texas, and at all times mentioned herein, was conducting business in the State of California, on the date of loss.

4.     Plaintiffs are ignorant of the true names and capacities of the defendants sued herein as DOES 1-20, Inclusive, and therefore sue these defendants by fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, each of the fictitiously named defendants is negligently and/or otherwise responsible in some manner, along with the named defendants, for the occurrences herein alleged, and Plaintiffs' damages as herein alleged were legally and proximately caused by that negligence and/or other wrongful acts and/or omissions to act, and the negligence and/or other acts and/or omissions to act of both the named and fictitiously named defendants.

5.     Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, the defendants named in this action, as well as the fictitiously named defendants, and each of them, were agents and employees of the remaining defendants, and in doing the things hereinafter complained of, were acting within the course and scope of such agency and/or employment and with the knowledge and consent of the remaining defendants.

6.     Jurisdiction of this court is proper because all acts and omissions to act alleged herein took place in the City of Eastvale, County of Riverside, State of California.

7.     At all times herein mentioned, Plaintiffs allege thereon that 6758 Heathgrove Drive, Eastvale, California 92880-3805 ("subject property") was the private residential property owned by Plaintiffs' Insureds, Francisco (Frank) Burgos and Brenda Montengro.

8.     At all times herein mentioned, Plaintiffs allege thereon that the vehicle, a 2019 white Tesla; Model 3 Long Range; Drivetrain 4X2; Vin No. 5YJ3E1EA2KF314002; CA License Plate No. 8KBU822 ("subject vehicle") was owned/possessed by Plaintiffs' Insureds, Francisco (Frank) Burgos and Brenda Montengro.

9.     On or about, January 18, 2023, as a result of the improper and illegal acts and/or omissions to act by Defendants, TESLA, and DOES 1-20, Inclusive, a fire loss incident occurred

- 2 -

1  ("fire loss incident") in the garage at Plaintiffs' Insureds' subject property when one (1) of three
2  Powerwall Units of a Tesla Powerwall Unit 3 ("subject Tesla Powerwall Unit 3") manufactured,
3  designed, distributed, inspected, supplied, serviced, sold, installed and/or repaired by Defendants,
4  TESLA, and DOES 1-20, Inclusive, was defective and/or failed, causing a fire to erupt, resulting
5  in extensive damage to Plaintiffs' Insureds' subject property and subject vehicle.

6    10.    On or about January 25, 2023, STATE FARM GENERAL INSURANCE
7  COMPANY'S Origin & Cause expert ("O&C expert") conducted an on-site investigation into the
8  fire loss incident described above.    The following information is from the O&C expert's
9  preliminary report:

10    **"This fire was determined to have originated within the attached garage associated**
11  **with 6758 Heathgrove Drive, Eastvale, CA.  All fire movement, fire intensity patterns, along**
12  **with corresponding witness statements revealed the fire's specific area along the north**
13  **interior wall of the garage.**

14    **A complete excavation of the fire scene was conducted, which revealed the remains**
15  **of three (3) Tesla power wall systems, an extension cord and several sites of electrical activity**
16  **along wiring associated with the structure's electrical system.**

17    11.    On or about October 19, 2023, STATE FARM GENERAL INSURANCE
18  COMPANY'S O&C expert interviewed Insured, Frank Burgos.   The expert engineers were also
19  in attendance.  The following information is from the interview:

20    **Mr. Burgos stated, on the date of loss prior to the fire, he was eating dinner at 7:00**
21  **p.m. when he heard a big "bang" from garage area.  He said he thought something may**
22  **have fallen in the garage, so he kept eating.  Mr. Burgos then heard some smaller "bangs"**
23  **and went to the laundry room and opened the door to the garage and saw smoke and a fire**
24  **coming from the Tesla Powerwall units.**

25    12.    On or about February 23, 2023, STATE FARM GENERAL INSURANCE
26  COMPANY'S O & C expert and STATE FARM GENERAL INSURANCE COMPANY'S expert
27  engineers, along with plaintiff's Origin and Cause experts, and all other interested parties, attended
28  a site examination at the scene of the above-described fire loss incident.  On October 19, 2023,

- 3 -

1    and October 20, 2023, the STATE FARM GENERAL INSURANCE COMPANY'S O&C expert

2    hosted a joint destructive testing ('JDT'), wherein STATE FARM GENERAL INSURANCE

3    COMPANY'S expert engineers again were in attendance, and all other interested parties,

4    including Defendant's expert. At the JDT session, there was an examination of the artifacts taken

5    as evidence from the above-described fire loss incident. The following information is from the

6    Plaintiffs' engineering expert's report, dated August 7, 2024:

7         **On February 23, 2023, [the expert engineers] attended a site examination. Later, on**

8    **October 19-20, 2023, they attended a laboratory exam and reviewed the artifacts from both**

9    **the site and laboratory exams. The origin of the fire was found to be in the Tesla Powerwall**

10   **Unit in the form of a failure of the roll crimp in cells. "The defect was not limited to a single**

11   **cell but was observed in the majority of the cells that were inspected. . . The fire was caused**

12   **by the failure of a cell in a Tesla Power wall and the reason for the failure was poorly**

13   **manufactured cells that allowed corrosion to occur. The fire would not have taken place if**

14   **cells had been properly manufactured to prevent loss of hermetic seals and then cell positive**

15   **terminals."**

16        The following information is from Plaintiff's Origin & Cause experts' report with the

17   summary of their investigation and their opinions on the origin and cause of this fire:

18        **Investigative Summary**

19        **In summary, this fire occurred at the insured's residence, located at 6758 Heathgrove**

20   **Dr., Eastvale, CA 92880. This fire was determined to have originated along the north**

21   **interior wall of the attached garage. All fire movement, fire intensity patterns, and**

22   **corresponding witness statements revealed the fire's specific origin encompassing**

23   **the middle of Tesla Power Wall Battery units installed along the north wall. A**

24   **destructive examination conducted at the Reliant Investigations Laboratory**

25   **uncovered evidence of an internal failure within the Tesla Power Wall. Observations**

26   **made during the destructive examination corresponded with reports from the**

27   **insured that he first witnessed smoke going from the middle unit. This fire's cause,**

28

- 4 -

1    **more probable than not and with a reasonable degree of certainty, was determined**

2    **to have been the result of an adverse failure associated with the Tesla Power Wall.**

3    . . .

4    **Origin and Cause**

5    **Area of Origin:** The North Interior Wall of the Garage

6    **Point of Origin:** The Middle Tesla Power Wall Unit

7    **Ignition Source/Sequence:** Electrical Malfunction

8    **First Materials Ignited:** Likely the Adhesive and Battery Cells Within the Power Wall

9    **Event that Brought Ignition Source and Fuel Load Together:** Adverse Failure/Mal-

10   function Related to the Tesla Power Wall

11   **Classification of Fire Cause:** Accidental

12   **Origin:** This fire was determined to have originated along the north interior wall of the

13   attached garage. Specifically, this fire was determined to have originated within the

14   second of the three Tesla Power Wall units installed along the north interior wall. Physical

15   evidence and corresponding witness statements support the precise area of origin.

16   **Cause:**   The cause of this fire was determined to have been the result of an adverse

17   failure/malfunction of the Tesla Power Wall installed along the north interior wall.

18

19       In their summary and analysis, Plaintiff's Origin & Cause experts reviewed, considered

20   and addressed the other possible alternative sources of ignition. The following were all considered

21   and ruled out, with no evidence showing failure, malfunction or contribution to the fire:

22       •       Water Heater

23       •       Electrical System

24       •       Sprinkler Timer Box

25       •       Smoking

26       •       Incendiary Act (tested with use of K9 ignitable liquid to detect ignitable liquids)

27       •       Extension Cord

28       •       Car Jack (situated between two of the Tesla Power Wall units, but not plugged in)

STF.1689/STF.1690        SUBROGATION COMPLAINT FOR DAMAGES

1      • Tesla Model 3 and its 110-volt charger (no evidence of failure/malfunction)

2      13.    The fire loss incident described above was caused by the failed/defective subject

3  Tesla Powerwall Unit 3, manufactured, designed, distributed, inspected, supplied, serviced, sold,

4  installed and/or repaired by Defendants, TESLA, INC. and DOES 1-20, Inclusive.  The fire loss

5  resulted in extensive damage to the structure, the personal property of the Insureds and/or loss of

6  use of Plaintiffs Insureds' subject property and subject vehicle.

7      14.    Plaintiffs' Insureds purchased property insurance with Plaintiff, STATE FARM

8  GENERAL INSURANCE COMPANY and vehicle insurance with Plaintiff, STATE FARM

9  MUTUAL AUTOMOBILE INSURANCE COMPANY, prior to the date of this fire loss incident

10  and both policies were in full force and effect at the time of the above-described fire loss incident.

11  Plaintiffs fulfilled their obligations pursuant to the insurance agreements ("the Policies") between

12  Plaintiffs and its Insureds, as Plaintiffs reimbursed their Insureds for both the subject property and

13  the subject vehicle damage losses from this fire loss incident.

14      15.    Plaintiffs, STATE FARM GENERAL INSURANCE COMPANY and STATE

15  FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, are informed and believe, and

16  thereon allege, that the fire loss incident that occurred at Plaintiffs' Insureds' subject property and

17  subject vehicle from the failed/defective subject Tesla Powerwall Unit 3, was due to the improper

18  actions and/or omissions to act of Defendants, TESLA, INC. and DOES 1-20, Inclusive.

19      **FIRST CAUSE OF ACTION FOR NEGLIGENCE**

20      **[Against Defendants, TESLA, INC., a Texas corporation; and DOES 1-20, Inclusive,]**

21      16.    Plaintiffs incorporate by reference paragraphs 1 through 15 as though fully set forth

22  herein.

23      17.    Defendants, TESLA, and DOES 1-20, Inclusive, had a duty to use reasonable care

24  with respect to the manufacture, design, distribution, inspection, supply, service, sale, installation

25  and/or repair of the failed/defective subject Tesla Powerwall Unit 3, and/or its component parts.

26      18.    Defendants, TESLA, and DOES 1-20, Inclusive, negligently manufactured, designed,

27  distributed, inspected, supplied, serviced, sold, installed and/or repaired the failed/defective subject

28  Tesla Powerwall Unit 3, and/or its component parts, and/or negligently failed to issue adequate

- 6

1   instruction or warnings regarding the failed/defective subject Tesla Powerwall Unit 3,  and/or its

2   component parts, such that the failed/defective subject Tesla Powerwall Unit 3, and/or its component

3   parts, left Defendants' possession and/or control in a defective condition, with manufacturing and/or

4   design defects and/or insufficient instruction(s) and/or warning(s) of safety hazards and/or installation

5   instructions of the failed/defective subject Tesla Powerwall Unit 3, and/or its component parts.  A

6   manufacturer, designer, distributer, inspector, supplier, servicer, seller, installer and/or repairer is

7   negligent if it fails to use the amount of care in manufacturing, designing, distributing, inspecting,

8   supplying, servicing, selling, installing and/or repairing the product that a reasonably careful

9   manufacturer, designer, distributer, inspector, supplier, seller, installer and/or repairer would use in

10  similar circumstances to avoid exposing others to a foreseeable risk of harm.  In determining whether

11  Defendants used reasonable care, a trier of fact shall balance what Defendants knew or should have

12  known about the likelihood and severity of potential harm from the product against the burden of

13  taking safety measures to reduce or avoid the harm.

14      19.    The afore-described improper acts and/or omissions to act of Defendants, TESLA,

15  and DOES 1-20, Inclusive, was the legal and proximate cause of damages to Plaintiffs' Insureds and

16  to Plaintiffs.

17      20.    The afore-described improper acts and/or omissions to act of Defendants, TESLA,

18  and DOES 1-20, Inclusive, was a substantial factor in causing harm to Plaintiffs' Insureds and to

19  Plaintiffs.

20      21.    As a result of the negligence by Defendants, TESLA, INC., a Texas corporation,

21  and DOES 1-20, Inclusive, Plaintiffs sustained at least **$882,608.04** in damages, and the damage

22  amount is continuing and will further be pleaded at the time of trial. Plaintiff, STATE FARM

23  GENERAL  INSURANCE  COMPANY,  indemnified  its  Insureds  for  remediation,  repairs,

24  replacement and/or loss of use of property and paid on behalf of its Insureds the principal amount of

25  $733,750.31 to date for residential property damages.  STATE FARM GENERAL INSURANCE

26  COMPANY $472,635.00 under Coverage A for dwelling losses/damages; $93,144.02 under

27  Coverage B for personal property damages; $103,251.18 under Coverage C for loss of use; and

28  $64,720.11under Optional Property Provision for additional expenses.  The sums paid on this claim

1    are broken down as follows:

2          **Claim #75-44N9-38X: Residence**

3              Insurance Benefits to Date:                                    $733,750.31

4                  Coverage A - Dwelling:              $472,635.00
                   ($2,000.00 Insureds' ded. incl. in Cov. A)

5                  Coverage B - Personal Property:    $ 93,144.02

6                  Coverage C – Loss of Use:          $103,251.18
                   Optional Policy Provisions:        $ 64,720.11

7              7% Prejudgment interest through 10/01/2025:      $102,216.77

8              **Total For Claim #75-44N9-38X (Residence)      $835,967.08**

9

10         Plaintiff, STATE FARM GENERAL INSURANCE COMPANY also seeks pre-judgment

11    interest from the date of each insurance payment through resolution or judgment. Pre-judgment

12    interest through October 1, 2025, totals $102,216.77, and is increasing daily at a rate of seven percent

13    (7%) per annum. Plaintiff is seeking pre-judgment interest on this matter as a result of clear liability

14    against the Defendants, who on behalf of themselves or via their own insurance carrier could have

15    handled the claim of Plaintiffs' Insureds but instead required Plaintiffs' Insureds to file a first-party

16    insurance claim with their own insurance carrier STATE FARM GENERAL INSURANCE

17    COMPANY.

18         In addition to the residential claim, as described above, Plaintiffs' Insureds' vehicle was

19    damaged in this fire loss incident. Plaintiff, STATE FARM MUTUAL AUTOMOBILE

20    INSURANCE COMPANY indemnified its Insureds for the fair market value of the vehicle and paid

21    $38,053.40 on behalf of its Insureds for the claim. Plaintiff paid the vehicle claim as follows:

22          **Claim #75-44N9-52T: Vehicle**

23              Insurance Benefits to Date:                                    $38,053.50

24                  Valuation:                         $ 36,168.50
                   Insureds' deductible               $    500.00

25                  Vehicle Fees:                      $    100.50
                   IAA Rec Rides:                      $  1,284.50

26              7% Pre-judgment interest through 10/01/25:      $ 6,787.46

27              **Total For Claim #75-44N9-52T(Vehicle)      $44,840.96**

28         Plaintiff, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY also seeks

- 8 -

1   pre-judgment interest from the date of each insurance payment through resolution or judgment. Pre-

2   judgment interest through October 1, 2025, totals $6,787.46, and is increasing daily at a rate of seven

3   percent (7%) per annum. Plaintiff is seeking pre-judgment interest on this matter as a result of clear

4   liability against the Defendants, who on behalf of themselves or via its own insurance carrier could

5   have handled the claim of Plaintiffs' Insureds, but instead required Plaintiffs' Insureds to file a first-

6   party insurance claim with their own insurance carrier, STATE FARM MUTUAL AUTOMOBILE

7   INSURANCE COMPANY.

8        Additionally, Plaintiffs seek appropriate litigation costs of approximately $1,800.00 to date

9   for filing and service of this Complaint.  The total of the two claims comes to **$882,608.04** broken

10  down as follows:

11       **Claim #75-44N9-38X (Residence); and**       **$835,967.08**

12       **Claim #75-44N9-52T (Vehicle)**              **$ 44,840.96**

13            Approximate Litigation Costs to date:   $   1,800.00
             **Total of two claims to date:**          **$882,608.04**

14

15       Thus, the damage claim to date for Plaintiffs STATE FARM GENERAL INSURANCE

16  COMPANY and STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY for the

17  two claims collectively is at least **$882,608.04** and increasing daily. Plaintiffs fulfilled their

18  obligations pursuant to the insurance agreements between Plaintiffs and Plaintiffs' Insureds for the

19  property and vehicle damage losses. Plaintiffs now seek recovery, by way of this subrogation claim,

20  for all damages Plaintiffs paid to or on behalf of their Insureds, plus other miscellaneous damages,

21  costs, expert fees and pre-judgment interest from the date of loss, according to proof at trial.

22       <u>**SECOND CAUSE OF ACTION FOR STRICT PRODUCTS LIABILITY**</u>

23  **[Against Defendants, TESLA, INC., a Texas corporation; and DOES 1-20, Inclusive,**

24                    **and DOES 1-20, Inclusive]**

25       22.   Plaintiffs incorporate by reference paragraphs 1 through 21 as though fully set forth

26  herein.

27       23.   Defendants, TESLA, and DOES 1-20, Inclusive, manufactured, designed, distributed,

28  inspected, supplied, serviced, sold, installed and/or repaired the failed/defective subject Tesla

- 9 -

1    Powerwall Unit 3, and/or its component parts, such that the product contained manufacturing defects,

2    insufficient instruction(s) and/or warning(s) of potential safety hazards and/or design defects when

3    the product left said Defendants' possession and/or control.

4         24.    The product, and/or its component parts, contained a manufacturing defect (a product

5    contains a manufacturing defect if the product differs from the manufacturers' designs or

6    specifications or from other typical units of the same product line) and/or design defect (Consumer

7    Expectation Test - that the product, and/or its component parts, did not perform as safely as an

8    ordinary consumer would have expected it to perform when used or misused in an intended or

9    reasonably foreseeable way) or (Risk Benefit Test – once Plaintiff proves all of the following:  1.

10   That Defendants manufactured/distributed/sold the product; 2. That Plaintiff was harmed; and 3. That

11   the product design was a substantial factor in causing harm to Plaintiff then Plaintiff prevails unless

12   Defendants prove that the benefits of the product's design outweigh the risks of the design

13   considering (a) The gravity of the potential harm resulting from the use of the product; (b) The

14   likelihood that this harm would occur; (c) The feasibility of an alternative safer design at the time of

15   manufacture; (d) The cost of an alternative design; and (e) The disadvantages of an alternative design;

16   and (f) Other relevant factors) when it left the possession of Defendants and failed to issue adequate

17   instructions or warnings regarding product, and/or its component parts (1. That Defendants

18   manufactured/ distributed/ inspected/ sold the product; 2. That the product had potential risks that

19   were known or knowable in light of the scientific knowledge that was generally accepted in the

20   scientific community at the time of manufacture/distribution/sale;  3. That the potential risks

21   presented a substantial danger when the product is used or misused in an intended or reasonably

22   foreseeable way; 4. That ordinary consumers would not have recognized the potential risks; 5. That

23   Defendants failed to adequately warn or instruct of the potential risks;  6.  That Plaintiff was harmed;

24   and 7. That the lack of sufficient instructions or warnings was a substantial factor in causing Plaintiff's

25   harm).

26        25.    Plaintiffs' Insureds were the users of the failed/defective subject Tesla Powerwall

27   Unit 3, and/or its component parts.

28        26.    At the time of the incident described herein, the product was being used in the manner

- 10 -

STF.1689/STF.1690           SUBROGATION COMPLAINT FOR DAMAGES

1    intended by Defendants, and/or in a reasonably foreseeable manner, and/or misused in a reasonably

2    foreseeable manner.

3        27.    The afore-described improper acts and/or omissions to act of Defendants, TESLA,

4    and DOES 1-20, Inclusive, was the legal and proximate cause of damages to Plaintiffs' Insureds and

5    to Plaintiffs.

6        28.    The afore-described improper acts and/or omissions to act of Defendants, TESLA,

7    and DOES 1-20, Inclusive, was a substantial factor in causing harm to Plaintiffs' Insureds and to

8    Plaintiffs.

9        29.    As a result of the strict products liability by Defendants, TESLA, INC., a Texas

10    corporation, and DOES 1-20, Inclusive, Plaintiffs sustained at least **$882,608.04** in damages, and

11    the damage amount is continuing and will further be pleaded at the time of trial. Plaintiff, STATE

12    FARM GENERAL INSURANCE COMPANY, indemnified its Insureds for remediation, repairs,

13    replacement and/or loss of use of property and paid on behalf of its Insureds the principal amount of

14    $733,750.31 to date for residential property damages.  STATE FARM GENERAL INSURANCE

15    COMPANY $472,635.00 under Coverage A for dwelling losses/damages; $93,144.02 under

16    Coverage B for personal property damages; $103,251.18 under Coverage C for loss of use; and

17    $64,720.11 under Optional Property Provision for additional expenses.  The sums paid on this claim

18    are broken down as follows:

19

20    **Claim #75-44N9-38X: Residence**

21        Insurance Benefits to Date:                                    $733,750.31
            Coverage A - Dwelling:            $472,635.00
22            ($2,000.00 Insureds' ded. incl. in Cov. A)
23            Coverage B - Personal Property:    $ 93,144.02
            Coverage C – Loss of Use:          $103,251.18
24            Optional Policy Provisions:        $ 64,720.11
25        7% Prejudgment interest through 10/01/2025:            $102,216.77
26        **Total For Claim #75-44N9-38X (Residence)**        **$835,967.08**

27

28    Plaintiff, STATE FARM GENERAL INSURANCE COMPANY also seeks pre-judgment

- 11

1     interest from the date of each insurance payment through resolution or judgment. Pre-judgment

2     interest through October 1, 2025, totals $102,216.77, and is increasing daily at a rate of seven percent

3     (7%) per annum. Plaintiff is seeking pre-judgment interest on this matter as a result of clear liability

4     against the Defendants, who on behalf of themselves or via their own insurance carrier could have

5     handled the claim of Plaintiffs' Insureds but instead required Plaintiffs' Insureds to file a first-party

6     insurance claim with their own insurance carrier STATE FARM GENERAL INSURANCE

7     COMPANY.

8         In addition to the residential claim, as described above, Plaintiffs' Insureds' vehicle was

9     damaged in this fire loss incident. Plaintiff, STATE FARM MUTUAL AUTOMOBILE

10    INSURANCE COMPANY indemnified its Insureds for the fair market value of the vehicle and paid

11    $38,053.40 on behalf of its Insureds for the claim. Plaintiff paid the vehicle claim as follows:

12           **Claim #75-44N9-52T: Vehicle**

| | | |
|---|---|---|
| Insurance Benefits to Date: | | $38,053.50 |
| Valuation: | $ 36,168.50 | |
| Insureds' deductible | $ 500.00 | |
| Vehicle Fees: | $ 100.50 | |
| IAA Rec Rides: | $ 1,284.50 | |
| 7% Pre-judgment interest through 10/01/25: | | $ 6,787.46 |
| **Total For Claim #75-44N9-52T(Vehicle)** | | **$44,840.96** |

18         Plaintiff, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY also seeks

19    pre-judgment interest from the date of each insurance payment through resolution or judgment. Pre-

20    judgment interest through October 1, 2025, totals $6,787.46, and is increasing daily at a rate of seven

21    percent (7%) per annum. Plaintiff is seeking pre-judgment interest on this matter as a result of clear

22    liability against the Defendants, who on behalf of themselves or via its own insurance carrier could

23    have handled the claim of Plaintiffs' Insureds, but instead required Plaintiffs' Insureds to file a first-

24    party insurance claim with their own insurance carrier, STATE FARM MUTUAL AUTOMOBILE

25    INSURANCE COMPANY.

26         Additionally,, Plaintiffs seek appropriate litigation costs of approximately $1,800.00 to date

27    for filing and service of this Complaint.

28           **Claim #75-44N9-38X (Residence); and**        **$835,967.08**

| Claim #75-44N9-52T (Vehicle) | $ 44,840.96 |
| Approximate Litigation Costs to date: | $ 1,800.00 |
| **Total of two claims to date:** | **$882,608.04** |

Thus, the damage claim to date for Plaintiffs STATE FARM GENERAL INSURANCE COMPANY and STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY for the two claims collectively is at least **$882,608.04** and increasing daily. Plaintiffs fulfilled their obligations pursuant to the insurance agreements between Plaintiffs and Plaintiffs' Insureds for the property and vehicle damage losses. Plaintiffs now seek recovery, by way of this subrogation claim, for all damages Plaintiffs paid to or on behalf of their Insureds, plus other miscellaneous damages, costs, expert fees and pre-judgment interest from the date of loss, according to proof at trial.

**THIRD CAUSE OF ACTION FOR BREACH OF IMPLIED WARRANTIES**

**[Against Defendants, TESLA, INC., a Texas corporation; and DOES 1-20, Inclusive, and DOES 1-20, Inclusive]**

30.     Plaintiffs incorporate by reference paragraphs 1 through 29 as though fully set forth herein.

31.     Defendants, TESLA, and DOES 1-20, Inclusive, manufactured, designed, distributed, inspected, supplied, serviced, sold, installed and/or repaired the failed/defective subject Tesla Powerwall Unit 3, and/or its component parts, such that the product contained manufacturing defects, insufficient instruction(s) and/or warning(s) of potential safety hazards and/or design defects when the product left said Defendants' possession or control.

32.     As a result, Defendants, TESLA, and DOES 1-20, Inclusive, breached the implied warranty of merchantability.  The failed/defective subject Tesla Powerwall Unit 3, and/or its component parts, was located and in use at Plaintiffs' Insureds' subject property, and at the time, Defendants, TESLA, and DOES 1-20, Inclusive, were in the business of manufacturing, designing, distributing, inspecting, supplying, servicing, selling, installing and/or repairing these goods and/or held itself out as having special knowledge and/or skill regarding these goods; the subject Tesla Powerwall Unit 3, and/or its component parts, was not of the same quality as those generally acceptable in the trade; and/or was not fit for the ordinary purposes for which such goods are used.

33.     As a result, Defendants, TESLA, and DOES 1-20, Inclusive, breached the Implied Warranty of Fitness for a Particular purpose. The failed/defective subject Tesla Powerwall Unit 3, and/or its component parts, was located and in use at Plaintiffs' Insureds' subject property and at the time, Defendants, TESLA, and DOES 1-20, Inclusive, knew or had reason to know that consumers intended to use the failed/defective subject Tesla Powerwall Unit 3, and/or its component parts, for a particular purpose and that Plaintiffs' Insureds were relying on the skill and judgment of Defendants, TESLA, and DOES 1-20, Inclusive, to furnish a subject Tesla Powerwall Unit 3, and/or its component parts, that were suitable for the particular purpose; and Plaintiffs' Insureds justifiably relied on Defendants, TESLA, and DOES 1-20, Inclusive, skill and judgment and that the subject Tesla Powerwall Unit 3, and/or its component parts, was not suitable for its particular purpose when it failed and/or was defective and caused a fire loss incident to occur at Plaintiffs' Insureds' subject property.

34.     The afore-described improper acts and/or omissions to act of Defendants, TESLA, and DOES 1-20, Inclusive, was the legal and proximate cause of damages to Plaintiffs' Insureds and to Plaintiffs.

35.     The afore-described improper acts and/or omissions to act of Defendants, TESLA, and DOES 1-20, Inclusive, was a substantial factor in causing harm to Plaintiffs' Insureds and to Plaintiffs.

36.     As a result of the breach of implied warranties by Defendants, TESLA, INC., a Texas corporation, and DOES 1-20, Inclusive, Plaintiffs sustained at least **$882,608.04** in damages, and the damage amount is continuing and will further be pleaded at the time of trial. Plaintiff, STATE FARM GENERAL INSURANCE COMPANY, indemnified its Insureds for remediation, repairs, replacement and/or loss of use of property and paid on behalf of its Insureds the principal amount of $733,750.31 to date for residential property damages. STATE FARM GENERAL INSURANCE COMPANY $472,635.00 under Coverage A for dwelling losses/damages; $93,144.02 under Coverage B for personal property damages; $103,251.18 under Coverage C for loss of use; and $64,720.11under Optional Property Provision for additional expenses. The sums paid on this claim are broken down as follows:

**Claim #75-44N9-38X: Residence**

STF.1689/STF.1690          SUBROGATION COMPLAINT FOR DAMAGES

| Insurance Benefits to Date: | | $733,750.31 |
|---|---|---|
| Coverage A - Dwelling: | $472,635.00 | |
| ($2,000.00 Insureds' ded. incl. in Cov. A) | | |
| Coverage B - Personal Property: | $ 93,144.02 | |
| Coverage C – Loss of Use: | $103,251.18 | |
| Optional Policy Provisions: | $ 64,720.11 | |
| 7% Prejudgment interest through 10/01/2025: | | $102,216.77 |
| **Total For Claim #75-44N9-38X (Residence)** | | **$835,967.08** |

Plaintiff, STATE FARM GENERAL INSURANCE COMPANY also seeks pre-judgment interest from the date of each insurance payment through resolution or judgment. Pre-judgment interest through October 1, 2025, totals $102,216.77, and is increasing daily at a rate of seven percent (7%) per annum. Plaintiff is seeking pre-judgment interest on this matter as a result of clear liability against the Defendants, who on behalf of themselves or via their own insurance carrier could have handled the claim of Plaintiffs' Insureds but instead required Plaintiffs' Insureds to file a first-party insurance claim with their own insurance carrier STATE FARM GENERAL INSURANCE COMPANY.

In addition to the residential claim, as described above, Plaintiffs' Insureds' vehicle was damaged in this fire loss incident. Plaintiff, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY indemnified its Insureds for the fair market value of the vehicle and paid $38,053.40 on behalf of its Insureds for the claim. Plaintiff paid the vehicle claim as follows:

**Claim #75-44N9-52T: Vehicle**

| Insurance Benefits to Date: | | $38,053.50 |
|---|---|---|
| Valuation: | $ 36,168.50 | |
| Insureds' deductible | $ 500.00 | |
| Vehicle Fees: | $ 100.50 | |
| IAA Rec Rides: | $ 1,284.50 | |
| 7% Pre-judgment interest through 10/01/25: | | $ 6,787.46 |
| **Total For Claim #75-44N9-52T(Vehicle)** | | **$44,840.96** |

Plaintiff, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY also seeks pre-judgment interest from the date of each insurance payment through resolution or judgment. Pre-judgment interest through October 1, 2025, totals $6,787.46, and is increasing daily at a rate of seven

- 15 -

percent (7%) per annum. Plaintiff is seeking pre-judgment interest on this matter as a result of clear liability against the Defendants, who on behalf of themselves or via its own insurance carrier could have handled the claim of Plaintiffs' Insureds, but instead required Plaintiffs' Insureds to file a first-party insurance claim with their own insurance carrier, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.

Additionally, Plaintiffs seek appropriate litigation costs of approximately $1,800.00 to date for filing and service of this Complaint.

| | |
|---|---|
| **Claim #75-44N9-38X (Residence); and** | **$835,967.08** |
| **Claim #75-44N9-52T (Vehicle)** | **$ 44,840.96** |
| Approximate Litigation Costs to date: | $   1,800.00 |
| **Total of two claims to date:** | **$882,608.04** |

Thus, the damage claim to date for Plaintiffs STATE FARM GENERAL INSURANCE COMPANY and STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY for the two claims collectively is at least **$882,608.04** and increasing daily. Plaintiffs fulfilled their obligations pursuant to the insurance agreements between Plaintiffs and Plaintiffs' Insureds for the property and vehicle damage losses. Plaintiffs now seek recovery, by way of this subrogation claim, for all damages Plaintiffs paid to or on behalf of their Insureds, plus other miscellaneous damages, costs, expert fees and pre-judgment interest from the date of loss, according to proof at trial.

## PRAYER

WHEREFORE, Plaintiff prays for judgment against Defendants, TESLA, INC., a Texas corporation, and DOES 1-20, Inclusive, as follows:

1.     For all damages legally caused by Defendants' acts and/or omissions to act in the amount of $882,608.04, and continuing, according to proof at trial;

**Claim #75-44N9-38X: Residence**

| | | |
|---|---|---|
| Insurance Benefits to Date: | | $733,750.31 |
| Coverage A - Dwelling: | $472,635.00 | |
| ($2,000.00 Insureds' ded. incl. in Cov. A) | | |
| Coverage B - Personal Property: | $ 93,144.02 | |
| Coverage C – Loss of Use: | $103,251.18 | |
| Optional Policy Provisions: | $ 64,720.11 | |

- 16

| 7% Prejudgment interest through 10/01/25: | $102,216.77 |
| **Total Claim #75-44N9-38X (Residence)** | **$835,967.08** |

**Claim #75-44N9-52T: Vehicle**

| Insurance Benefits to Date: | | $ 38,053.50 |
| Valuation: | $36,168.50 | |
| Insureds' deductible | $   500.00 | |
| Vehicle Fees: | $   100.50 | |
| IAA Rec Rides: | $ 1,284.50 | |
| 7% Pre-judgment interest through 10/01/25: | | $  6,787.46 |
| **Total Claim #75-44N9-52T (Vehicle)** | | **$44,840.96** |

| **Claim #75-44N9-38X: Residence; and** | |
| **Claim #75-44N9-52T: Vehicle** | **$880,808.04** |
| Approximate Litigation Costs to date: | $   1,800.00 |
| **Total of two claims to date:** | **$882,608.04** |

2.    For continuing costs of suit incurred by Plaintiffs herein;

3.    For continuing expert fees;

4.    For continuing pre-judgment interest according to proof; and

5.    For any and all other such relief as the court may deem just and proper.

Dated: August 11, 2025                          Respectfully,

WATKINS & LETOFSKY, LLP

*Brian C. O'Hara*

BRIAN C. O'HARA, ESQ.
Attorney for Plaintiffs
STATE FARM GENERAL INSURANCE
COMPANY and STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY

STF.1689/STF.1690-State Farm General Insurance Company v. Tesla, Inc., et al.\\Complaint.doc